UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRAM NGUYEN, *Ex Rel. United States*, | ) | Case No.: 1:09 CV 452 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF CLEVELAND, OHIO, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant City of Cleveland Ohio's ("Defendant") Motion for Summary Judgment (ECF No. 46). For the reasons set forth below, the court grants in part and denies in part Defendant's Motion.

## I. FACTS AND PROCEDURAL HISTORY

In 2009, Plaintiff Pram Nguyen ("Plaintiff") filed this, his second, lawsuit against Defendant concerning Cleveland Hopkins International Airport's ("CHIA") impact on the environment.

> Plaintiff holds a Bachelor of Science Degree in Chemical Engineering from Ohio University and has extensive experience working with major United States International Airports on Air Quality Control. [Plaintiff] has worked with airports across the country as well as environmental agencies on issues including Volatile Organic Compound ("VOC") and ozone Emission Reductions, Environmental Auditing, compliance reviews, testing, and the compilation of comprehensive emission inventories. [Plaintiff] has observed the emission of VOCs and other regulated pollutants into the air at CHIA on numerous occasions.
> [Plaintiff] has independently conducted studies on the emissions at various airports throughout the United States, including

> CHIA. [Plaintiff] developed mathematical models for predicting emissions due to the airport activities detailed in this complaint while he was working with the Air Pollution Control Agency in Cleveland, Ohio. [Plaintiff's] models are able to approximately predict actual emissions. The base figures that [Plaintiff] used for his calculations have been taken from a variety of sources, including public documents, government documents, industry publications, and financial records; in some cases, [Plaintiff] has made conservative estimations based on his extensive personal and professional knowledge of the industry and information he has obtained on the operations of airports of similar size and traffic as CHIA.
>
> ***
>
> In 1994, [Plaintiff] . . . . informed defendant's agent that defendant was in violation of environmental laws because defendant had not received proper permits for its emissions and had not notified the government organizations in charge of monitoring environmental compliance of its activities.

(Am. Compl., at ¶¶ 3–4, 61, ECF No. 16.)

In 2000, Plaintiff filed a qui tam action, *United States ex rel. Pram Nguyen v. City of Cleveland*, 1:00 CV 208 (N.D. Ohio) ("*Nguyen I*"), under the False Claims Act ("FCA") against seventy airport owners in the United States, including Defendant. Plaintiff alleged that the airports had fraudulently accepted federal funds prior to 2000 by falsely certifying compliance with environmental laws, including the Clean Air Act ("CAA"), in order to meet conditions for receiving those funds. The alleged violations concerned the airports' use of aircraft deicing and anti-icing fluids (collectively, "ADF"). Ultimately, all of the claims against all of the airports were dismissed.

The essence of Plaintiff's claim against Defendant was that Defendant wrongfully calculated its ADF-related emissions by using Federal Aviation Administration ("FAA") guidelines instead of the purportedly more accurate testing and calculation methods he had recommended to City of Cleveland officials. The court granted summary judgment in favor of Defendant and dismissed Plaintiff's suit against Defendant with prejudice in September 2005. *U.S. ex rel Nguyen v. City of*

*Cleveland*, 1:00 CV 208, 2005 WL 2416925, at *12 (N.D. Ohio Sept.. 30, 2005). The court determined that: (1) it was proper for Defendant to rely on the FAA for their emissions factor data and not Plaintiff's scientific methodology for measuring air emissions; and (2) there was no FCA violation.

Plaintiff filed a notice of appeal in October 2005. However, prior to filing this appeal, Plaintiff filed a Chapter 7 bankruptcy petition. *See In re Nguyen*, No. 05-95756 (Bankr. N.D. Ohio Oct. 16, 2005) (Doc. 1). Thus, Plaintiff's *Nguyen I* appeal and claims became apart of the bankruptcy estate. The bankruptcy trustee ultimately settled *Nguyen I* with defendants City of Cleveland and Toledo-Lucas County Port Authority for a total of $10,100. (*Id*. at Doc. 49.) Plaintiff initially objected to settling the claim; however, he withdrew his objection and waived his right to appeal the case as part of the final agreement. (*Id*.) The settlement agreement included a Release and Covenant Not to Sue, in which the Trustee, on behalf of the Nguyen Estate, agreed on August 18, 2006, to the following:

> ...not to sue and [] to forever release and discharge the [Defendant], together with their assigns; agents, and current and former officers, directors, and employees, of and from all past, present, and future claims, demands, rights, losses, expenses, actions, and/or causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, vested or contingent, including, without limitation any such claims that are the property of the Nguyen Estate, whether disclosed or undisclosed in the Nguyen bankruptcy schedules, relating to, (1) the [Defendant] obtaining []any funds from the United States or any of its Agencies in connection with construction at the [Defendant's] facilities, (2) the [Defendant's] certifications that [it] ha[s] complied with or will comply with all applicable environmental protection laws and regulations, and (3) all claims that were or could have been asserted in the Qui Tam Actions, except only as provided in the following sentence. Specifically excluded from this release are claims asserted in the "whistleblower case," originally filed in the United States District Court for the Northern District of Ohio, Eastern Division, captioned Nguyen v. City of Cleveland et al. (Case No.

-3-

> 1:99-cv-02990), and subsequently submitted to arbitration by order of the court.

Appellee's Br. App. A. at 5-6, *Nguyen v. City of Cleveland*, 534 F. App'x 445 (6 th Cir. 2013) ( No. 12-4296). The parties to the Release and Covenant not to Sue agreement were the City of Cleveland, Toledo-Lucas County Port Authority and Lauren A. Helbling, acting in her capacity as the duly appointed Chapter 7 Trustee of the bankruptcy estate of Plaintiff. (*Id*. at 2.)

In 2009, Plaintiff filed the present suit under both the FCA and the CAA, using a provision of the latter act allowing for citizen suits. In his Amended Complaint, he alleges violations under the FCA regarding false certification of compliance with environmental laws similar to the violations alleged in *Nguyen I*, but this time, Plaintiff expands his focus beyond ADF activity. In addition to the same substantive ADF-related allegations presented in *Nguyen I*, he alleges that emissions from other sources, namely the refueling of airplanes, use of ground support equipment and auxiliary power units, roadway operations, construction, and the daily taxiing, taking off, and landing of airplanes (collectively, "non-ADF activities"), also violate the CAA and other environmental laws. Plaintiff alleges that Defendant falsely certified its compliance with the CAA and other environmental laws as they relate to non-ADF activities in violation of the FCA. He claims he was unaware of those emission sources' illegality when he filed *Nguyen I*, but acknowledges they existed at the time of that suit. In all, the present suit covers four areas:

> (1) Allegations under the FCA based on Defendant's false certification of its compliance with emission standards concerning ADF-related activity at CHIA.
>
> (2) Allegations under the FCA based on Defendant's false certification of its compliance with emission standards for non-ADF-related activity at CHIA, focusing on the other emission sources (refueling, ground support equipment, etc.) that Nguyen identified in this suit but did not include in *Nguyen I*.

>   (3) Allegations under the CAA based on ADF-related activity at CHIA, claiming that ADF-related emissions exceeded maximum thresholds set by the Act.
>
>   (4) Allegations under the CAA based on non-ADF-related activity at CHIA, claiming that emissions from the other sources (refueling, ground support equipment, etc.) exceeded maximum thresholds set by the Act.

Defendant filed a Motion to Dismiss for failure to state a claim (ECF No. 25), arguing that issue preclusion bars Plaintiff's FCA claims and *res judicata* bars all of his claims. The court found that collateral estoppel or issue preclusion barred Plaintiff's ADF-related FCA claim and *res judicata* barred Plaintiff's non-ADF-related FCA claim and his ADF-related CAA claim. The court denied Defendant's Motion in regard to Plaintiff's non-ADF-related CAA claim. Defendant then filed a Motion for Reconsideration (ECF No. 33), requesting the court to reconsider its finding that Plaintiff may proceed on the non-ADF-related CAA claim. The court granted that Motion, finding that the non-ADF related CAA claim should have been brought in *Nguyen I* and was therefore barred by *res judicata*.

Plaintiff then filed a notice of appeal on October 24, 2012. The Sixth Circuit affirmed this court's decision regarding Plaintiff's FCA claims and reversed this court's decision regarding Plaintiff's CAA claims, finding that "the conduct that forms the basis for Plaintiff's Clean Air Act claim is alleged to have occurred continuously until he filed his complaint in 2009, well after *Nguyen I* was decided in 2005. Therefore, because Plaintiff has asserted causes of action that arose after the decision in *Nguyen I*, the doctrine of claim preclusion does not bar the consideration of those claims." Additionally, the Sixth Circuit found that, because "no court has ever evaluated Defendants' conduct under the Clean Air Act," issue preclusion also does not preclude Plaintiff from litigating that issue. Thus, the only claims presently before this court are Plaintiff's CAA claims.

Defendant has now filed the present Motion for Summary Judgment, arguing that "[t]he Release and Covenant Not to Sue bars all of the claims remanded to this Court by the Sixth Circuit." (Mot. for Summ. J. at 3, ECF No. 46-1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4(1st Cir. 2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941,

943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F.Supp.2d 866, 871 (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

Defendant argues that "[t]he Release and Covenant Not to Sue bars all of the claims remanded to this Court by the Sixth Circuit." (Mot. for Summ. J. at 3, ECF No. 46-1.) Defendant asserts that Plaintiff's bankruptcy estate owned all of his interests in the *Nguyen I* claims, the bankruptcy trustee had authority to settle the *Nguyen I* appeal, and therefore, the Release and Covenant Not to Sue bars Plaintiff from pursing his CAA claims raised in this present case. (*Id.* at 8-11.) Plaintiff contends that the Release and Covenant Not to Sue expressly limits the scope of the agreement to the items that comprised his bankruptcy estate. (Pl.'s Mem. Contra at 3-5.) He further argues that his current CAA claims could not have possibly been included as property of his bankruptcy estate because they did not exist when the Release and Covenant Not to Sue was drafted or at the conclusion of the *Nguyen I* litigation.(*Id.*) Plaintiff also asserts that his CAA claims do not relate to any claims raised in *Nguyen I* and therefore the release does not bar him from pursuing the CAA claims raised in the present suit. (*Id.*)

The Sixth Circuit has stated that, "[a]s a general matter, Ohio law recognizes the validity of releases of causes of actions as part of settlement agreements." *Wheel Specialities, Ltd.v. Starr Wheel Group, Inc.*, 530 F. App'x 491, 494 (6th Cir. 2013). Additionally, the Sixth Circuit has noted that, under Ohio law, traditional principles of contract interpretation are applied to releases and the general rule is "that courts are to 'presume that the intent of the parties is reflected in the language of the contract.'" *Id.* (citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (2011). However, Ohio courts have carved out an important exception to this general rule concerning anticipatory releases. *AM Int'l Inc. v. Int'l Forging Equip. Corp.*, 982 F. 2d 989, 995-96 (6th Cir. 1993) (citing *Solan v. Standard Oil Co.*, 203 N.E.2d 237 (1964)).

While anticipatory releases are not *per se* void under Ohio law, "the Ohio Supreme Court [has] held that verbatim terms of a general release are not controlling under circumstances where the parties to a release did not actually intend to discharge all liability." *Wheel Specialties, Ltd.*, 530 F. App'x at 494 (quoting *AM Int'l Inc.*, 982 F.2d at 996) (citing *Solan*, 203 N.E.2d 237). The Ohio Supreme Court has also held that "'[w]hether the parties to a release actually intended to discharge all liability is a question of fact for the trier of the facts' and set out factors for ascertaining the parties' intent." *AM Int'l Inc.*, 982 F.2d at 996 (quoting *Solan*, 177 N.E.2d at 240). Those factors include:

> The absence of bargaining and negotiating leading to settlement; the releasee is clearly liable; absence of discussion concerning personal injuries; the contention that the injuries were in fact unknown at the time the release was executed is reasonable; an inadequate amount of consideration received compared with the risk of the existence of unknown injuries...; haste by the releasee in securing the release...; and the terms of the release exclude the injuries alleged.

*Solan v. Standard Oil Co.*, 203 N.E.2d at 240. It is also necessary to examine all the circumstances surrounding the execution of the release to determine the intent of the parties. *Id*. Furthermore, Ohio courts have stated that "releases from liability for future tortious conduct ... are generally not favored by the law and will be narrowly construed." *Denlinger v. City of Columbus*, 2000 WL 1803923, at *6 (Ohio Ct. App. Dec. 7, 2000). Thus, "anticipatory releases can only be enforced if the future conduct to be released is stated in clear and unambiguous terms and notes exactly what kind of liability and what persons and/or entities are being released." *Id*. (quoting *Denlinger*, 2000 WL 1803923, at *6.)

Here, the relevant parties to the Release and Covenant Not to Sue were Defendant and Lauren A. Helbling, acting in her capacity as the duly-appointed Chapter 7 Trustee of the

bankruptcy estate of Plaintiff. Plaintiff was not a party to the agreement. Additionally, because Lauren A. Helbling was acting in her capacity as a trustee, she only possessed the authority that was conferred upon her by the Bankruptcy Code when entering into the agreement. *In re Cannon*, 277 F. 3d 838, 853 (6th Cir. 2002). Under the Bankruptcy Code, "'all legal or equitable interests of the debtor in property as of the commencement of the case' are considered property of the bankruptcy estate." *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013) (citing U.S.C. § 541 (a)(1)). Therefore, causes of action belonging to the debtor prior to the bankruptcy are considered property of the bankruptcy estate. *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 225 (6th Cir. 1996). The Sixth Circuit has stated, that "[t]he trustee stands in the shoes of the debtor and has standing to bring any action that the bankrupt could have brought had he not filed a petition for bankruptcy." *Id.*; see also Tyler, 736 F.3d at 461 (6th Cir. 2013) ("only the bankruptcy trustee has standing to pursue pre-petition causes of action."). However, only those cause of action belonging to the debtor when the bankruptcy petition is filed are property of the bankruptcy estate to be administered by the trustee. *In re Patterson*, 2008 WL 2276961, at * 3 (Bankr. N.D. Ohio Jun. 3, 2008). Thus, the court finds that the trustee had no authority to release future claims, which were not property of the bankruptcy estate. So the question is whether the claims at issue herein can be deemed property of the estate.

The Sixth Circuit has held, that "[w]hether a particular cause of action belongs to the debtor so that it constitutes 'property of the estate' depends upon state law." *In re Cannon*, 277 F. 3d at 853 (citing *In re RCS Engineered Prods. Co., Inc*., 102 F.3d at 225.) Therefore, the Sixth Circuit has stated, that "if the debtor could have raised a state claim at the commencement of the bankruptcy case, then that claim is the exclusive property of the bankruptcy estate." *Id.* at 854; *In re Patterson*,

-10-

2008 WL 2276961, at * 3 (If the last element constituting the cause of action occurred prior to the bankruptcy petition being filed, then the cause of action is property of the bankruptcy estate.). Furthermore, the Sixth Circuit has clarified that "the entire cause of action is property of the estate, even if further post-petition damages were incurred." *Tyler*, 736 F.3d at 462.

In this case, the conduct that forms the basis for Plaintiff's CAA claim is alleged to have occurred continuously from September 1996 until he filed his Complaint in 2009. (First. Am. Compl. ¶ 51, ECF No. 16.) Therefore, while it is clear that Plaintiff could have raised a CAA claim at the commencement of his bankruptcy case in 2005 for conduct occurring before that time, he could have also raised a CAA claim subsequent to filing his bankruptcy petition for the conduct that occurred after he filed his petition. Thus, Plaintiff's CAA claim that arose from the conduct occurring from 1996 until Plaintiff filed his bankruptcy petition in 2005 was property of the bankruptcy estate and the trustee had authority settle this claim. However, Plaintiff's CAA claim that arose from the conduct occurring from the time he filed his bankruptcy petition in 2005 until he filed his Complaint in 2009 constituted a cause of action for post-petition conduct; therefore it was not property of the bankruptcy estate. As such, the court finds that the bankruptcy trustee could not have intended to release Plaintiff's future CAA claim relating to conduct that occurred from the time Plaintiff filed his bankruptcy petition in October 2005 until he filed his Complaint in 2009 as she did not have authority to release this future claim. Thus, the court finds that Plaintiff's CAA claim relating to conduct that occurred from the time he filed his bankruptcy petition in 2005 until he filed his Complaint in 2009 is not barred by the Release and Covenant Not to Sue.

However, the court finds that the bankruptcy trustee did have authority to settle Plaintiff's CAA claim as it relates to conduct that occurred from 1996 until Plaintiff filed his bankruptcy

petition in October of 2005. Thus, the court must first look to the language of the Release and Covenant Not to Sue to determine whether the trustee intended to release Plaintiff's CAA claim as it relates to this conduct. The court finds that the agreement entered into by the trustee and Defendant was unambiguous and specific. It released Defendant from specifically noted claims including in relevant part:

> all past, present, and future claims, demands, rights, losses, expenses, actions, and/or causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, vested or contingent, including, without limitation any such claims that are the property of the Nguyen Estate, whether disclosed or undisclosed in the Nguyen bankruptcy schedules, relating to ...the [Defendant's] certifications that [it] ha[s] complied with or will comply with all applicable environmental protection laws and regulations; and (3) all claims that were or could have been asserted in [Nguyen I]...

Appellee's Br. App. A. at 5-6, *Nguyen v. City of Cleveland*, 534 F. App'x 445 (6th Cir. 2013) ( No. 12-4296). It is clear from the language of the agreement that Defendant is released from all claims that are the property of the bankruptcy estate arising from failure to comply with environmental protection laws and regulations and all other claims that could have been asserted in *Nguyen I*. Additionally, there is no evidence to suggest anything to the contrary. Therefore, the court finds that the Release and Covenant Not to Sue is enforceable as it relates to conduct that occurred from 1996 until Plaintiff filed his bankruptcy petition in October of 2005. Additionally, because Plaintiff alleges in his CAA claim that Defendant violated the Clean Air Act, an environmental law, and because the portion of the claim involving conduct from 1996 until Plaintiff filed his bankruptcy

petition in October of 2005 could have been asserted in *Nguyen I*, a suit for such conduct is specifically barred.

### IV. CONCLUSION

For the foregoing reasons, the court hereby grants in part and denies in part Defendant's Motion for Summary Judgment (ECF No. 46). Accordingly, Plaintiff's CAA claim as it relates to conduct that occurred from 1996 until Plaintiff filed his bankruptcy petition in October of 2005 is dismissed with prejudice. However, Plaintiff's CAA claim as it relates to conduct occurring from the time he filed his bankruptcy petition in October 2005 until he filed his Complaint in 2009 remains.

This court hereby sets a telephonic conference with counsel for the parties in the within case on August 5, 2014, at 11:30 a.m.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

July 15, 2014