UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| PRAM NGUYEN, *Ex Rel. United States*, | ) | Case No.: 1:09 CV 452 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF CLEVELAND, OHIO, | ) | |
| | ) | |
| Defendant | ) | ORDER |


Currently pending before the court in the above-captioned case is Defendant City of Cleveland, Ohio's ("Defendant" or "City") Second Motion for Summary Judgment. (Def.'s Second Mot. Summ. J., ECF No. 65.) Plaintiff Pram Nguyen ("Plaintiff" or "Nguyen") has filed an Opposition (Pl.'s Opp'n, ECF No. 69), to which the City filed a Reply (Def.'s Reply, ECF No. 70). For the reasons set forth below, the court grants Defendant's Second Motion for Summary Judgment. (Def.'s Second Mot. Summ. J., ECF No. 65.)

## I.  BACKGROUND

### A. Factual and Procedural History

For over a decade, Plaintiff has relentlessly pursued claims against the City for alleged violations of environment laws at Cleveland Hopkins International Airport ("CHIA"). Litigation began in 2000 when Plaintiff filed a *qui tam* action, *United States ex rel Pram Nguyen v. City of*

*Cleveland*, 1:00 CV 208 (N.D. Ohio) ("*Nguyen I*"), under the False Claims Act ("FCA") against seventy defendants, including the City, who operate airports across the United States. He alleged the airports had fraudulently accepted federal funds by falsely certifying compliance with environmental laws, including the Clean Air Act ("CAA" or "Act"), in order to meet conditions for receiving those funds. The alleged violations concerned the airports' use of aircraft deicing and anti-icing fluids (collectively, "ADF").

The essence of Nguyen's claim was that the City wrongfully calculated its ADF-related emissions by using Federal Aviation Administration ("FAA") guidelines instead of the purportedly more accurate testing and calculation methods he had recommended. All Defendants were eventually dismissed, except the City and one other municipal entity, against whom Nguyen sought damages, fees, and injunctive relief. The court granted summary judgment in favor of Defendant and dismissed Plaintiff's suit with prejudice in September 2005. *U.S. ex rel Nguyen v. City of Cleveland*, 1:00 CV 208, 2005 WL 2416925, at *12 (N.D. Ohio Sept.. 30, 2005). The court determined that: (1) it was proper for the City to rely on the FAA for their emissions factor data; and thus, (2) there was no FCA violation because Defendant did not "knowingly" misrepresent compliance with federal environmental laws. However, the court made no findings as to the alleged violations of the underlying environmental laws.

Plaintiff filed a notice of appeal in October 2005. However, prior to filing the appeal, Plaintiff filed a Chapter 7 bankruptcy petition. *See In re Nguyen*, No. 05-95756 (Bankr. N.D. Ohio Oct. 16, 2005). Thus, Plaintiff's *Nguyen I* appeal and claims became a part of the bankruptcy estate. The bankruptcy trustee ultimately settled *Nguyen I* with Defendant for a total of $10,100. The settlement agreement included a Release and Covenant Not to Sue.

In 2009, Plaintiff filed the present suit under both the FCA and the CAA. In his Amended Complaint, he alleged violations regarding false certification of compliance with environmental laws similar to those alleged in *Nguyen I*, but expands his focus beyond ADF activity. (First Am. Compl. ¶¶ 25-35, ECF No. 16.) In addition to ADF-related allegations, covering the period from 2003 to 2008, he alleged that emissions from other sources, namely the refueling of airplanes, use of ground support equipment and auxiliary power units, roadway operations, construction, and the daily taxiing, taking off, and landing of airplanes (collectively, "non-ADF activities"), violate the CAA and other environmental laws. (*Id.* ¶¶ 36-45.)

On July 7, 2010, Defendant filed a Motion to Dismiss (ECF No. 25) for failure to state a claim, arguing that issue preclusion bars Plaintiff's FCA claims and res judicata bars all of his claims. The court found that Plaintiff's ADF-related FCA claim was barred by issue preclusion, while his non-ADF-related FCA claim and ADF-related CAA claim were barred by res judicata. The court denied Defendant's Motion as to Plaintiff's non-ADF-related CAA claim. (ECF No. 31.) However, after reviewing Defendant's Motion for Partial Reconsideration (ECF No. 33), the court found that the non-ADF related CAA claim should also have been brought in *Nguyen I* and was therefore barred by res judicata. (ECF No. 37.)

Plaintiff then filed a notice of appeal on October 24, 2012. (ECF No. 38.) The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") affirmed this court's decision regarding Plaintiff's FCA claims, but reversed as to Plaintiff's CAA claims, finding that:

> The conduct that forms the basis for Plaintiff's Clean Air Act claim is alleged to have occurred continuously until he filed his complaint in 2009, well after *Nguyen I* was decided in 2005. Therefore, because Plaintiff has asserted causes of action that arose after the decision in *Nguyen* I, the doctrine of claim preclusion does not bar the consideration of those claims.

-3-

(ECF No. 42, at 13.) Additionally, the Sixth Circuit noted that, because "no court has ever evaluated Defendants' conduct under the Clean Air Act," issue preclusion also does not preclude Plaintiff from litigating that issue. Thus, the Sixth Circuit remanded Plaintiff's CAA claims for further consideration by this court.

Defendant then filed its first Motion for Summary Judgment on April 23, 2014, arguing that "[t]he Release and Covenant Not to Sue bars all of the claims remanded to this Court by the Sixth Circuit." (Def.'s First Mot. Summ. J. 3, ECF No. 46-1.) The court ultimately determined that the Release and Covenant Not to Sue was only enforceable as it related to conduct that occurred from 1996 until Plaintiff filed his bankruptcy petition on October 16, 2005. (ECF No. 51, at 12. ) Accordingly, the only claims presently before this court are Plaintiff's CAA claims alleging violations occurring after October 2005.

### B. Plaintiff's Claims under the CAA

Nguyen brought this action against the City pursuant to the Citizen Suits provision of the CAA, 42 U.S.C. § 7604. (First Am. Compl. ¶ 47, ECF No. 16.) This provision states, "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of [] an emission standard or limitation under this chapter . . . ." 42 U.S.C. § 7604(a)(1). Plaintiff alleges Defendant violated an "emission standard or limitation" when it failed to acquire a permit under Title V of the CAA, despite CHIA's emissions of several regulated pollutants exceeding the relevant threshold. (First Am. Compl. ¶¶ 47-48.) "Through his own calculations," Nguyen has determined that the emissions from CHIA's ADF and non-ADF activities far exceed  the threshold triggering the permitting requirements of the CAA. (*Id.* ¶¶ 35, 38-39.) Despite Plaintiff's attempts to inform

Defendant of his calculations, CHIA continues to operate without the required permit. (*Id.* ¶¶ 43, 51.)

Nguyen also claims that the City violated provisions of the Ohio State Implementation Plan by: 1) failing to report the use of toxic chemicals at CHIA to the Ohio Environmental Protection Agency, as required by Ohio Administrative Code ("OAC")  3745-100; and 2) failing to adopt a Transportation Improvement Plan to reduce the amount of regulated pollutants at CHIA, as required by OAC 3745-101. (*Id.* ¶ 49.)

Plaintiff alleges that he "lives near [CHIA] and uses the Airport and has been and will continue to be injured by defendant's violation of the [CAA]." (*Id.* ¶ 52.)  As a result, Nguyen requests that the court: 1) declare that Defendant violated the CAA and order CHIA to obtain a Title V permit; 2) order Defendant to pay civil penalties; and 3) order Defendant to pay of outstanding emissions fees. (*Id.* Prayer for Relief ¶¶ 1-3.)

## C. Statutory Framework

The CAA,  42 U.S.C. § 7401, et seq., enacted in 1970 and amended in 1977 and 1990, creates a cooperative framework between the federal government and the states to reduce air pollution nationwide. To that end, the United States Environmental Protection Agency ("U.S. EPA") is charged with identifying air pollutants that may endanger public health and welfare and developing standards, known as National Ambient Air Quality Standards ("NAAQS"), that specify the maximum allowable air concentration of these pollutants. 42 U.S.C. §§ 7408(a), 7409 (2009). The U.S. EPA is also required to divide each state into air quality control regions. *Id.* § 7407(b)-(c). The Ohio EPA is responsible for the Greater Metropolitan Cleveland Intrastate Air Quality Control Region. 40 C.F.R. § 81.22 (2009). These air quality control regions are considered either

"attainment" or "nonattainment," based on whether or not they are in compliance with the NAAQS. 42 U.S.C. § 7407(d). For example, the Greater Metropolitan Cleveland Intrastate Air Quality Control Region is an attainment area for some air pollutants like carbon monoxide and nitrogen dioxide, but is a nonattainment area for ozone. Ohio, 40 C.F.R. § 81.336 (2009). The CAA establishes different emissions requirements for facilities in each type of region, with stricter standards applicable to those in non-attainment areas. 42 U.S.C. § 7410 (2009).

The CAA delegated to the states primary responsibility for implementing the NAAQS standards. *Id.* §§ 7401, 7407. Each state is required to formulate a State Implementation Plan ("SIP") establishing "enforceable emission limitations and other control measures" designed to attain and maintain NAAQS. *Id.* § 7410(a)(2)(A). Once a SIP has been approved by the U.S. EPA, after public notice and comment, its requirements become federal law and are fully enforceable in federal court. *Id.* §§ 7413, 7604; *see also Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 33536 (6th Cir. 1989). The Ohio SIP, Title 3745 of the OAC, has been approved by the U.S. EPA. Approval Status, 40 C.F.R. § 52.1873 (2009).

In order to achieve and maintain the NAAQS, the CAA also requires states to regulate, through their SIPs, new or modified sources of air pollution. 42 U.S.C. § 7410(a)(2) (2009). Detailed under Title I of the CAA, this "New Source Review"("NSR") encompasses two separate pollution control programs, the Prevention of Significant Deterioration ("PSD") program, *Id.* §§ 7470–92, and the Nonattainment New Source Review ("NNSR") program, *Id.*, §§ 7501–7515. These provisions have been incorporated into the Ohio SIP at Chapter 3745-31of the OAC. Ohio Admin. Code 3745–31-02 cmt. (2012). The PSD program regulates sources located in  areas that are in attainment of NAAQS for a given pollutant. 42 U.S.C. § 7475(a) (2009). Proponents of projects must obtain

-6-

a permit before constructing or modifying a "major emitting facility."[1] *Id.* § 7475(a). The new source must also comply with other provisions, such as the requirement to install the "best available control technology" ("BACT") for controlling every regulated pollutant to a specified limit. *Id.* § 7475(a)(4). The more stringent requirements of the NNSR apply to new sources located in nonattainment areas. *Id.* § 7502(c)(5). Facilities must obtain "permits for the construction or operation of new or modified major stationary sources[2] anywhere in the nonattainment area." *Id.* They must also install technology that will achieve the "lowest achievable emission rate,"*Id.* § 7503(a)(2), a more onerous requirement than BACT, and secure emissions "offsets," by reducing emissions from existing sources to neutralize the proposed emissions from the new source. *Id.* § 7503(a)(1)(A).

This already-tangled web became even more complex in 1990, when Congress again amended the CAA to establish a nationwide operating permit program to regulate sources of air pollution. *See generally* 42 U.S.C. §§ 7661–7661f. These provisions, often referred to as "Title V,"

---

[1]    A source may qualify as a "major emitting facility" in one of two ways: a) it is one of 28 enumerated types of sources with the potential to emit 100 tons per year or more of "any air pollutant," or; 2) it is any other stationary source with the potential to emit 250 tons per year or more of any air pollutant. 42 U.S.C. § 7479(1) (2009).

[2]    A "major stationary source"  includes "any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant."*Id.* § 7602(j). However, the applicable regulation further clarifies that the NNSR program "shall apply to any new major stationary source or major modification that is major for the pollutant for which the area is designated nonattainment." 40 C.F.R. § 51.165(a)(2)(i) (2009). Thus, an NNSR permit is required for a source that will emit 100 tons per year or more of the nonattainment pollutant.

require every major stationary source[3] of air pollution to obtain an operating permit that consolidates into one document all applicable regulations. *Id.* § 7661a(a). Thus, instead of imposing a new set of requirements, Title V incorporates the emission limitations, standards, monitoring requirements, compliance schedules, and other conditions already applicable to a source. *See Id.* § 7661c(a). Among these requirements are those imposed by existing state new source review programs. Each state is required to develop, and submit for U.S. EPA approval, an operating permit program that meets the requirements of Title V. *Id.* § 7661a(d)(1). Ohio's Title V program is codified at Chapter 3745–77 of the OAC and is administered by the Ohio EPA. *See* Ohio Admin. Code 3745-77-02 (2012).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

---

[3]     Title V employs the CAA's standard definition of "major stationary source," which is also utilized by the NNSR program. *See* 42 U.S.C. § 7602(j) (2009). U.S. EPA regulations further clarify that a major source "means any stationary source (or any group of stationary sources that are located on one or more contiguous or adjacent properties, and are under common control of the same person (or persons under common control)) belonging to a single major industrial grouping and that" have the potential to emit at least 10 tons of hazardous air pollutant a year or 25 tons of combined hazardous air pollutants a year; at least 100 tons of any air pollutant a year; or trigger the requirements of the NNSR permitting program.  40 C.F.R.§ 70.2.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir. 2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of

production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F.Supp.2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

## III.  LAW AND ANALYSIS

Defendant's initial challenge in the instant Motion for Summary Judgment is to Plaintiff's standing to maintain his claims. (Def.'s Second Mot. Summ. J.7-11, ECF No. 65-1.) The City argues that Nguyen has not articulated how he has been harmed by the operations at CHIA. (*Id.* at 8-9.) Moreover, were CHIA to obtain a Title V permit, there would be no reduction in emissions levels. Thus, any harm Plaintiff claims to suffer would not be redressed by the permit. (*Id.* at 9-11.) Because Plaintiff fails to show any concrete, redressable injury, he may not compel Defendant to obtain a Title V permit.

Even if Nguyen had standing, he has not demonstrated, Defendant contends, that CHIA is required to have a Title V permit. (*Id.* at 11.) The emission sources on which Plaintiff relies for his

calculations are expressly excluded from Title V permit applicability because they are either: 1) not owned or controlled by the City; (2) mobile emission sources; or (3) fugitive emissions sources.(*Id.* at 11-20.)

Additionally, Defendant's Motion only addresses Plaintiff's allegations regarding Title V, as Defendant also contends that Plaintiff has waived the claims regarding violations of Ohio Rules 3745-100 and 3745-101. (*Id.* at 3 n.2) And, while Plaintiff has opposed this Motion, the City also objects to the two expert reports Nguyen provided in support of his arguments. (Def.'s Reply 4, ECF No. 70.)

Thus, the court must resolve three threshold issues before it may consider the merits of Plaintiff's claims: 1) whether Plaintiff has waived his claims relating to alleged violations of Rules 3745-100 and 3745-101 of the Ohio Administrative Code; 2) whether the court may consider Plaintiff's expert reports in resolving the instant Motion; and 3) whether Plaintiff has standing to maintain this suit under the CAA.

### A. Plaintiff's Remaining Claims

Defendant argues that the only remaining portion of Plaintiff's CAA claim is that related to violations of Title V permitting requirements. The claim has been waived inasmuch as it invokes Rules 3745-100 and 3745-101 of the OAC. In a footnote, Defendant explains:

> During the April 23, 2015 status conference, counsel for Plaintiff stated that the only remaining claim is that CHIA is violating the CAA by failing to have a Title V permit. The First Amended Complaint alleges violations of OAC rules 3745-100 and 3745-101. FAC ¶ 49. These are unrelated to the Title V program and at this point Plaintiff has waived those claims.

(Def.'s Second Mot. Summ. J. 3 n.2, ECF No. 65-1.) However, Defendant has not cited to any authority in support of the proposition that a plaintiff may waive claims in such a manner.

Nonetheless, upon further analysis, it is apparent to the court that the regulations relied on by Nguyen impose no applicable requirements on Defendant related to operations at CHIA. Chapter 3745-100 of the OAC imposes certain notification requirements on regulated facilities that distribute toxic chemicals. *See generally* Ohio Admin. Code 3754-100-XX (2009). However, the requirements of this chapter are only applicable to "[a] facility that . . . is in a standard industrial classification (SIC) (as in effect on January 1, 1987) major group or industry code listed in paragraph (A) of rule 3745-100-17 of the Administrative Code . . . ." Ohio Admin. Code 3754-100-05 (2009). The Standard Industrial Classification Manual classifies virtually all activity at an airport under Major Group 45. Enter. Standard Indus. Classification Manual, 1986 4 I.R.B. 52 (1986). This is not one of the SIC major groups regulated by Chapter 3745-100. *See* Ohio Admin. Code 3754-100-17 (2009).

Chapter 3745-101 is similarly inapplicable. Plaintiff has alleged that "Defendant has not adopted a Transportation Improvement Plan to reduce the amount of [regulated pollutants] at [CHIA], as required by Ohio Administrative Code 3745-101." (First Am. Compl. ¶ 49, ECF No. 16.) Chapter 3745-101 implements the requirements of Section 176(c) of the CAA. *See* Ohio Admin. Code 3745-101-01 (2012). Section 176(c) prohibits federal approval of a variety of actions unless the responsible federal entity makes a determination that the action it seeks to undertake or fund conforms to the requirements of the relevant SIP. *See* 42 U.S.C. § 7501 (2009). Yet, Rule 3745-101-03 explains that such "conformity determinations are required for . . . [t]he adoption, acceptance, approval or support of [transportation improvement plans ("TIPs")] . . . developed . . . by [a

-12-

*metropolitan planning organization* ("MPO")[4]. . ." Ohio Admin. Code 3745-101-03 (2012) (emphasis added). Furthermore, a subsequent rule confirms, "[t]he respective MPO shall be responsible for . . . [d]eveloping transportation plans and TIPs . . . ." *Id.* 3745-101-04(B)(5)(b)(I). The Northeast Ohio Areawide Coordinating Agency, not Defendant, is the MPO for the region in which CHIA is located. *See, e.g.*, H.R. Rep. No. 105- 648, at 148 (1999).

## B. Plaintiff's Expert Reports

### i. John Jacus

Next, the court must address whether Nguyen's expert reports may be considered in opposition to the Motion for Summary Judgment. Defendant first contends that the report prepared by John R. Jacus ("Jacus") (Jacus Report, ECF No. 69-1) is inadmissible. (Def.'s Reply 5-6, ECF No. 70.) First, as an environmental lawyer practicing in Colorado, Jacus is not qualified, Defendant argues, to provide expert testimony on Title V permitting in Ohio or the appropriate method for calculating the relevant emissions. (*Id.* at 5.) Nor is the subject matter of his report appropriate, since it amounts to "a recitation of legal principles and guidance that demonstrates no more knowledge about the law or facts than present counsel in this case." (*Id.* at 6.)

The court finds the latter argument persuasive. While there is no *per se* ban on lawyers testifying as expert witnesses, they generally may not opine on the legal questions at issue in the matter. *See United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir. 1999) (holding inadmissible expert testimony about meaning of specific provision of law defendant accused of violating). Here, Jacus

---

[4]      Rule 3745-101-02 defines "Metropolitan Planning Organization" or "MPO" as "that organization designated as being responsible, together with the state, for conducting the continuing, cooperative, and comprehensive transportation planning process under 23 USC 134 and 49 USC 5303 within the MPO boundary as recognized by the governor of Ohio." Ohio Admin. Code 3745-101-02 (2012).

seeks to offer opinions on the proper interpretation of terms within the statutes and regulatory guidance applicable to this case. But, it is the responsibility of the court, not testifying witnesses, to define legal terms. *See Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible." (citing *Berry v. City of Detroit,* 25 F.3d 1342, 1353–54 (6th Cir.1994))).

Accordingly, the court will not consider the report (Jacus Report, ECF No. 69-1) in resolving the instant Motion for Summary Judgment, insofar as it expresses impermissible legal opinions regarding the subject matter of this case. *See Stoler v. Penn Cent. Transp. Co.,* 583 F.2d 896, 899 (6th Cir. 1978) (explaining district court judge has duty to exclude improper legal opinions).

### ii. Scott McDowell

Defendant also argues that the report prepared by Scott McDowell ("McDowell") (McDowell Aff., ECF No. 69-2) should be excluded because Plaintiff failed to disclose him as an expert witness in violation of this court's August 26, 2015 Order setting expert report deadlines, and Rule 26 of the Federal Rules of Civil Procedure. (Def.'s Reply 7, ECF No. 70.) Defendant adds that this report, actually prepared for *Nguyen I*, "is not probative here, as the report is over a decade old, does not evaluate current conditions at CHIA, and calculates fugitive emissions of a deicing agent that has not been used at CHIA since 2002." (*Id.*)

However, the purpose of Rule 26(a)(2)(A) is to afford opposing parties "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment. While Plaintiff may have failed to disclose this expert at the appropriate time, Defendant has not shown any prejudice caused by the late disclosure.  Additionally, Defendant's arguments about the

-14-

probative value of the report goes toward the weight of this evidence, rather than its admissibility. Therefore, the court declines to exclude the report (McDowell Aff., ECF No. 69-2) from consideration at this time.

### C. Standing[5]

Defendant argues that Plaintiff lacks standing, under Article III of the United States Constitution, to bring this citizen suit, challenging CHIA's alleged violations of Title V permitting provisions. (Def.'s Second Mot. Summ. J. 7-8, ECF No. 65-1.) Because Plaintiff has failed to demonstrate that he has suffered a concrete, redressable injury as a result of Defendant's failure to obtain a Title V permit, the City contends this court lacks jurisdiction to decide the present matter. (*Id.*)

The requirement that a party have standing flows from the limitation of federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). To satisfy the requirements of Article III,[6] a plaintiff must

---

[5]  Notwithstanding the resolution of the question of standing relative to Plaintiff's remaining claims, the court may dispose of the request for declaratory relief, as such a remedy will not support standing for a CAA citizen-suit. *See, e.g., Little v. Louisville Gas & Elec. Co.*, 33 F. Supp. 3d 791, 802 (W.D. Ky. 2014) *aff'd in part sub nom. Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695 (6th Cir. 2015) (citing *WildEarth Guardians v. Pub. Serv. Co. of Colo.,* 690 F.3d 1174, 1191 (10th Cir. 2012).

[6]  In addition to the requirements of Article III, the federal judiciary has also adhered to "prudential considerations that are part of judicial self-government." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Prudential standing requires "the interest sought to be protected by the complainant [to be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 U.S. 666, 671 (6th Cir. 2005) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153 (1970)). However, Defendant does not raise this issue in its Motion. Moreover, unlike the constitutional

demonstrate the following three elements: 1) he has suffered an "injury in fact," 2) the injury is "fairly traceable" to the challenged actions of the defendant, and 3) the injury will likely be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-61. Because these elements are not "mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* at 561. Thus, at summary judgment, a plaintiff can no longer rely on mere allegations of standing but must support each element by specific facts via affidavits or other evidence. *Id.* (citing Fed. R. Civ. P. 56(e)). The court will now address each of these requirements in turn.

To satisfy the first requirement, injury-in-fact, a plaintiff must suffer "an invasion of a legally protected interest which is concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical' " before he can bring an action. *Id.* at 560-61. In other words, a plaintiff "must somehow differentiate himself from the mass of people who may find the conduct of which he complains to be objectionable only in an abstract sense." *Id.* at 560 n.1. This standard is one of kind and not of degree. As such, the claimed injury "need not be large, an identifiable trifle will suffice." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973).

---

requirements, prudential, or statutory, standing may be modified or even abrogated by Congress. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). And, at least some courts have interpreted the citizen suit provision of the Clean Air Act as extending statutory standing to the full extent permitted by Article III. *See, e.g.*, *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 354 F. Supp. 2d 697, 700 (E.D. La. 2005); *Texas Campaign for the Env't v. Lower Colorado River Auth.*, No. 4:11-cv-791, 2012 WL 1067211, at *3 (S.D. Tex. Mar. 28, 2012). Therefore, if Plaintiff had standing under Article III in the instant matter, he would also have statutory standing under the CAA.

-16-

Defendant argues that Plaintiff has only complained of the kind of conjectural harm that will not satisfy the injury-in-fact requirement. (Def.'s Second Mot. Summ. J. 8, ECF No. 65-1.) When asked, during a deposition, how he had been harmed by CHIA's failure to obtain a Title V permit, Plaintiff stated:

> First of all, the Ohio EPA/Cuyahoga County developed the State Implementation wrong. And I believe that I live in a healthy area, but, in fact, it may be an unhealthy area. And then, the city emits the emissions directly to a public place. And then I use the airport, and the people that – my family or the people who live near to the airport, it also impacts their health. But they don't know for sure in one or two months, one or two years, or maybe it's five or 10 years.

(*Id.* at 8-9.) Such vague statements, Defendant contends, fail to identify how Plaintiff has been injured in a "concrete and personal way." (*Id.* at 9.) (quoting *Lujan*, 504 U.S. at 581.)

In his Opposition (Opp'n, ECF No. 69), Nguyen offer no persuasive challenge to Defendant's arguments concerning injury-in-fact. Instead, Plaintiff contends that he need not satisfy the requirements of Article III. (*Id.* at 3-4.) Rather, as an "aggrieved member of the public" and "thus 'a victim of any offenses under' the CAA," he has standing under the "public trust doctrine" to assert his claims. (*Id.* at 4.)

Given the voluminous contrary authority, the court can only express confusion at Plaintiff's argument. The requirements of Article III constitute the "*irreducible* constitutional minimum of standing . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added); *see also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself' . . . that is likely to be redressed if the requested relief is granted.") (internal citations omitted). Perhaps Nguyen hopes to avoid the strictures of Article III because he explicitly seeks to advance the type of "generalized grievance" excluded from federal jurisdiction. *See Lujan*,

-17-

504 U.S. at 573-74 ("We have consistently held that a plaintiff . . . – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy."); *see also Heartwood, Inc. v. U.S. Forest Serv.*, No. 1:00 CV 683, 2001 WL 1699203, at *4 (W.D. Mich. Dec. 3, 2001) (noting injury-in-fact requirement "ensur[es] that suit is brought by a plaintiff facing an injury to a concrete interest to protect rather than 'a roving environmental ombudsman seeking to right environmental wrongs wherever he might find them.' ").

Nguyen fails to provide any support for the notion that the "public trust" doctrine relieves him of the burden of demonstrating Article III standing. Because he cannot. The "public trust doctrine" is a matter of state law. *See PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 1235 (2012) ("[T]he public trust doctrine remains a matter of state law " and its "contours . . . do not depend upon the Constitution."). In Ohio, the public trust doctrine charges the State with the responsibility to manage certain lands for the benefit of the public. *See, e.g.*, *Lemley v. Stevenson*, N.E.2d 237, 243 (Ohio Ct. App. May 26,1995) ("We begin by restating that the state as trustee for the water and lands of Lake Erie can, through proper legislation, use the trust for the benefit of the  public."). This concept has no application here. And, while the cases on which Plaintiff mistakenly relies do indeed refer to "the public" and "trust" in connection with violations of environmental protection statutes, they have nothing to do with Article III standing. *See United States v. Snook*, 366 F.3d 439, 446 (7th Cir. 2004) (considering sentencing enhancement for abusing position of trust under § 3B1.3 of the United States Sentencing Guidelines); *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1049

-18-

(9th Cir. 2002), *overruled by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (same);

*United States v. Tonawanda Coke Corp.*, 5 F. Supp. 3d 343, 358 (W.D.N.Y 2014) (same).

Stranger still, Plaintiff does not invoke the "public trust doctrine" in support of the allegations that make up the bulk of his Complaint – Defendant's continued operation of CHIA without the necessary Title V permit. Instead, Plaintiff claims he has standing "to challenge Defendant on whether it, in violation of Ohio Administrative Code (OAC) 3745-101, expanded operations at CHIA absent the required New Source Review Permit . . . ." (*Id.* at 4.) The alleged violations to which Plaintiff refers are Defendant's construction of a new runway[7] and deicing facility and purchase of upgraded airport ground support equipment. (*Id.*)Yet, as explained above, Rule 3745-101 is inapplicable to Defendant. *See* Section II.A. *supra*. And, Plaintiff fails to explain what relation, if any, Rule 3745-101 has to the New Source Review program.

Most importantly, Plaintiff fails to provide any evidentiary support for these contentions. Unsupported assertions are an inadequate response to a motion for summary judgment, for it is not the responsibility of the court to "comb though the record" to determine whether genuine issues of material fact exist. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (internal citation and quotations omitted). Without a sufficient response from Plaintiff, the court is left to rely on the evidence provided by Defendant in an attempt to clarify Nguyen's true concerns.

Nonetheless, what becomes apparent, after careful consideration of the record, is that whatever harm Plaintiff may complain of, it is not redressable by a favorable decision in this case.

---

[7]    The construction of the new runway took place from about 2001-2004. (First Am. Compl. ¶ 40, ECF No. 16.)  Because this activity occurred prior to October 2005, any potential claims are barred by the Release and Covenant Not to Sue. (ECF No. 51.)

-19-

To satisfy the redressability requirement of Article III standing, Plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). Nguyen has requested declaratory relief, civil penalties, and emissions fees, all in an effort to compel Defendant to obtain a Title V permit. But, it is the Ohio EPA that determines whether a facility is required a obtain a permit under Title V. *See* Ohio Admin. Code 3745-77-02 (2012) ("Upon written request of a Title V permit applicant, the [director of environmental protection] shall make a determination of the applicability or inapplicability of any provision or class of requirements under the act . . . .") The Agency has already made such a determination with respect to CHIA. In 1999, and again in 2011, the Ohio EPA evaluated the operations at CHIA and determined that its emissions, when properly calculated, were below Title V permitting thresholds. (McGreal Aff. ¶¶ 8.-10., ECF No. 65-4.)

Thus, to determine whether Nguyen's injury is likely to be redressed, the court would be compelled to speculate on whether Ohio EPA would grant a Title V permit on reapplication by the City. As the Supreme Court has explained, "[w]hen the existence of an element of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' a party must present facts supporting an assertion that the actor will proceed in such a manner." *Massachusetts v. EPA*, 549 U.S. 497, 545-46 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 568-71 (1992)). And, plaintiff has offered no such facts. Instead, Plaintiff seems to tacitly acknowledge the speculative nature of his request. When asked during his deposition whether his harm would be redressed if the airport were required to obtain a permit, he responded: "Not go away

-20-

immediately. But if the EPA had a better emissions inventory and they do better with  the computer modeling, they may develop a better State Implementation Plan for people who live in Cuyahoga County and for Ohio in general." (ECF No. 65-2, at 18.) In addition, the court notes that it would seem a perverse outcome to hold Defendant liable for acting in reliance on a determination by the appropriate state regulatory agency. *Cf. Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 480-82 (6th Cir. 2004) (applying Burford abstention to preclude consideration of plaintiffs' claims under CAA challenging state agency's permitting decisions).

Consequently, the court finds that Plaintiff lacks standing to sue Defendant for alleged violations of the CAA. Thus, the court need not reach Defendant's additional arguments regrading the applicability of Title V to the operations at CHIA.

### IV.  CONCLUSION

For the foregoing reasons, the court hereby grants Defendant's Second Motion for Summary Judgment. (Def.'s Second Mot. Summ. J., ECF No. 65.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 15, 2016

-21-